HAX, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, February 19, 1907.

1. RAILROADS: Fencing Right of Way: Pleading. In an action brought under section 1105, Revised Statutes of 1899, the petition, which alleged that the defendant negligently permitted the fence along its right of way to become dilapidated and out of repair and so remain for a long time, was demurrable for failing to allege that defendant had notice of the unsafe condition of the fence, but it was good after verdict.

2. ———: ———: Instruction: Notice of Defective Fence. In such action an instruction which authorized a verdict for the plaintiff without requiring a, finding that the defendant had notice of the defective condition of the fence, was harmless error where the uncontradicted evidence showed that the fence had been in a dilapidated and defective condition for five years, a length of time such that the law would imply notice, and that the defendant had been notified and requested to repair.

3. ———: ———: ———: Lawful Fence. In such an action an instruction defining a lawful fence, which it was the duty of the defendant to maintain, as one which should be suffcient "to resist" animals, did not impose on the defendant a greater burden than the statute which requires a fence sufficient to "prevent" animals from getting on the railroad.

4. ———: ———: ———: Immaterial Issue. And in such an action an instruction submitting the question as to whether the fence as originally constructed was a lawful fence, in the absence of evidence upon that point, was harmless error, where the evidence was conclusive that the fence was defective and had been for a long time.

5. ———: ———: Killing **Stock:** Measure of Damages. In an action against a railroad company for killing and injuring plaintiff's steers which went upon its right of way on account of its failure to comply with section 1105, the measure of plaintiff's damages for the steers injured was the difference between the value of his steers immediately before and immediately after the injury, plus the expense of care bestowed upon the injured steers; the value of an injured steer after its condition had been improved by labor, care and feed of the plaintiff was not material.

6. ———: ———: ———: Pleading. In such action an allegation describing the injury to a steer and alleging that it was "otherwise bruised and injured" was sufficient to let in proof of any injury to any part of the steer's body.

7. PRACTICE: Remarks of Counsel. An appellant cannot complain of remarks of counsel as being improper and prejudicial, where such remarks simply state evidence which was incompetent but went without objection.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart*, Judge.

AFFIRMED.

*O. D. Jones* and *J. G. Trimble* for appellant.

(1) After fences have been once erected as required by law, the company is only liable for a negligent failure to maintain such fences and it is therefore entitled to a reasonable time in which to make repairs, after having knowledge of a defect or after that period has expired in which by the exercise of reasonable diligence it could have knowledge of such defect.  Clarady v. Railroad, 73 Mo. 578; Case v. Railroad, 75 Mo. 670; Goodrich v. Railroad, 152 Mo. 233.  (2) The instruction numbered 1 entirely fails to submit whether the defendant had notice a sufficient time to have repaired its fence and purports to cover the entire case and authorizes a verdict.  Baer & Co. v. Lisman, 85 Mo. App. 78; Boothe v. Loy, 83 Mo. App. 607; Owensby v. Ins. Co., 98 Mo. App. 376.

*Balthrope & Smith* for respondent.

The true measure of damages is as to the two animals killed, the value of the animals at the time of the killing and as to the wounded animal the difference between his value just before the wounding and just after the wounding, provided his whole value was not destroyed by the wounding and if so destroyed by the wounding his value just before the wounding. Dietrich v. Railroad, 89 Mo. App. 40; Cunningham v. Dickerson, 104 Mo. App. 413.

BLAND, P. J.—Defendant's railroad runs through forty acres of plaintiff's inclosed and cultivated land, in Knox county, Missouri. The railroad company at some time built a post and wire fence along the sides of its road where the same passes through plaintiff's land. The posts were round sapplings and soon rotted, and the wires fell away from the posts and sagged, so that cattle could step over the fence on to defendant's right of way. The fence had been in this sagged condition about five years prior to October 8, 1904, when three of plaintiff's steers escaped from his adjoining pasture, over the defective fence on to defendant's right of way and were run upon by one of defendant's locomotives and passenger trains. Two of the steers were killed outright and the third was so badly injured as to be of but little, if any, value. The action is bottomed on section 1105, R. S. 1899, and the petition asks for double damages. The jury found for plaintiff and assessed his damages at one hundred and five dollars, which, on motion of plaintiff, were doubled by the court and judgment rendered for two hundred and ten dollars, from which defendant appealed.

1. At the close of plaintiff's evidence, defendant offered an instruction in the nature of a demurrer to the evidence and also filed a motion in arrest of judgment. The refusal to grant the instruction or to arrest

the judgment, defendant contends is error, for the reason the petition fails to state any cause of action. After preliminary statements, the charging part of the petition is as follows:

"The defendant wholly disregarding its duties under the law to plaintiff has always neglected and failed to erect and maintain a lawful fence on the north side of its said right of way and railroad where it passes through plaintiff's said inclosed cultivating lands aforesaid, but has for a long time prior to the time of the injury hereinafter complained of, negligently and carelessly permitted its unlawful fencing, composed of insufficient wires and posts along said north side of its said right of way and adjoining and partially inclosing plaintiff's said inclosed and cultivating lands to become in such a dilapidated and unsafe condition as to be of little or no benefit whatever to plaintiff in preventing his stock from passing there through and entering upon defendant's said railroad track; that for a long time prior and up to the eighth day of October, 1904, the posts to which were attached the wires constituting defendant's said fencing had become so decayed and rotten as to cause the staples to fall out and the wires to drop down so that plaintiff's cattle could and did easily step over or under the same," etc.

The petition fails to allege that defendant had notice of the dilapidated condition of its fence, and for this reason defendant contends it is fatally defective. The petition states, in effect, that though defendant constructed a fence, it did not construct a lawful one, and the fence it did erect was negligently and carelessly permitted to become out of repair and defective. The case was tried on evidence that the fence was for a long time (five years) in a defective condition. There is no evidence as to whether or not it was a lawful fence when constructed, and the case should be disposed of on the evidence upon which it was tried in the circuit court.

For failure to allege that defendant had notice of the defect, the petition was demurrable, but the allegation, that the fence, for a long time prior to the accident, was negligently and carelessly permitted by defendant to remain in an unsafe condition, is sufficient after verdict. The most that can be said against the petition is that it defectively states a good cause of action.

2. The court gave the following instruction for plaintiff:

"1. The court instructs the jury that the law requires the defendant to erect and maintain lawful fences along both sides of railroad track and right of way where it passes through cultivated or inclosed farming lands and where such fence is composed of posts and wire it shall be not less than four and one-half feet high with posts set firmly in the ground not more than eight feet apart with wires securely fastened to the posts at proper distances apart so as to resist horses, cattle and swine and like stock. And if the jury shall believe from all the evidence in the cause that on or about the eighth day of October, 1904, the plaintiff had and kept in a pasture field of his, adjoining defendant's said railroad track and right of way, in Liberty township, Knox county, Missouri, three head of his steers, and on that day said animals escaped from said field of plaintiff onto the right of way and track of defendant's said railroad, on account of defendant's failure to keep and maintain such lawful fence along the side of its right of way and railroad track where it adjoins plaintiff's said pasture field; and whilst plaintiff's said animals were so on defendant's said railroad track and right of way, they were run into and struck by one of defendant's engines and train of cars, whereby two of them were killed and one of them was injured, your verdict should be for the plaintiff in such sum as you find from all the evidence in the cause was the value of said two animals killed and the damages sustained by plaintiff in the wounding of his

said other animal; and in considering your verdict, as to the damages sustained by plaintiff by the injuring of plaintiff's said animal you shall take into consideration its actual value immediately before and after such injury as shown by the evidence in the cause; the total amount of your verdict not exceeding one hundred and five dollars ($105)."

Defendant contends the instruction is erroneous, for the reason it fails to submit to the jury to find whether or not defendant had notice of the defective condition of its fence a sufficient length of time to have repaired it. After a railroad company has constructed fences along the sides of its track, as required by section 1105, supra, it is not liable for injuries to stock which escape upon the right of way through defects in the fences, unless it has actual notice of the defects, or they have existed for such a length of time as will cause the law to imply notice. [A., T. & S. Ry. Co. v. Kavanaugh, 163 Mo. 54, 63 S. W. 374.] The instruction is open to criticism, but we cannot see how defendant was prejudiced by the omission of the feature of notice in the instruction, for the reason the uncontradicted evidence is, the defect in the fence was of long standing, and also that defendant had not only been notified of it but had been requested to make repairs, prior to the accident. Under this uncontradicted testimony, defendant was not prejudiced by the error in the instruction. The instruction, in defining a lawful fence, told the jury it should be sufficient "to resist horses, cattle, swine and like stock." Section 1105, supra, requires the company to construct and maintain fences sufficient to prevent stock getting on the track. The phrase "to resist" is not as strong in this connection as the phrase "to prevent," therefore, the instruction did not impose on defendant a greater burden than the statute. The instruction is erroneous in that it submitted to the jury to find whether or not the fence, as originally constructed, was a lawful fence, in the ab-

123 App—12

sence of any evidence that it was not a lawful fence, and in the face of the presumption that it was a lawful one (McCallister v. Ross, 155 Mo. l. c. 94, 55 S. W. 1027). But the evidence of the defect in the fence and of its long standing is so conclusive, and the judgment is so manifestly for the right party, that it should not be reversed for this error in the instruction, an error which could not have prejudiced the defendant.

3.    Plaintiff's evidence tends to show the steers were worth from thirty to thirty-five dollars each just before the accident, and defendant contends the verdict is excessive, for the reason there was some evidence tending to show the crippled steer was alive at the time of the trial, and worth from fifteen to twenty dollars. Plaintiff's evidence tends to show this steer was worth nothing immediately after his injury; that he carried feed and water to him and took care of him for two months before he got him on his feet, and afterwards for several months gave him special care and feed and built him up and had him in a fair condition of flesh at the time of the trial, but he was unfit for beef. The measure of plaintiff's damages was the difference in the value of the steers immediately before and immediately after the injury, plus the expense of care, etc., bestowed upon the crippled steer. Defendant was not entitled to have plaintiff's damages, in respect to this steer, offset on account of the steer's improved condition, brought about by labor, care, feed and attention of plaintiff.

4.    The injury to the crippled steer was to his left hip and back. The petition alleged he was injured on the shoulder and ribs and that he was otherwise bruised and injured. Defendant insists that in proof of injury to this steer, plaintiff should have been confined to injury to his shoulder and ribs. The allegation "otherwise bruised and injured," is broad enough to let in proof of any injury to any part of the steer's body.

5.   The eighth ground of the motion for new trial is as follows:

"The court erred in failing and refusing to rebuke plaintiff's counsel for making the improper and prejudicial statement: 'In my office Mr. Hax said to that claim agent, 'give me $90 and take the steer.'"

George F. Riehl, claim agent for defendant, testified, on the question of damages, to conversations he had with plaintiff, in respect to the value of the steers. On his cross-examination witness testified to a conversation had in the office of plaintiff's attorney (Mr. Balthrope), in the course of which this question was asked him: "Didn't Mr. Hax tell you right then that he would take $90 and you could have the steer (the crippled one)? Riehl answered, "I told him we didn't want the steer." This evidence went in without objection. It was not improper for counsel to repeat it, or its substance, in his address to the jury.

Discovering no reversible error in the record, the judgment is affirmed. All concur.